IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERA WILLNER, individually, and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>MANPOWER INC. and DOES 1 through 50,<br><br>    Defendants.<br>_____/ | No. C 11-02846 JSW<br><br>**ORDER REGARDING MANPOWER INC.'S MOTION TO DISMISS AND/OR TO STRIKE** |

Now before the Court is the motion filed by defendant Manpower Incorporated ("Manpower") to dismiss and/or to strike. The Court finds that this matter is appropriate for disposition without oral argument and the matter is deemed submitted. *See* N.D. Civ. L.R. 7-1(b). Accordingly, the hearing set for May 4, 2012 is HEREBY VACATED. Having considered the parties' pleadings and relevant legal authority, for the reasons set forth in the this Order, the Court grants in part and denies in part Manpower's motion.

**BACKGROUND**

Plaintiff Vera Willner ("Plaintiff") bring this lawsuit on behalf of herself and a putative class of persons who worked for Manpower. Plaintiff alleges that Manpower operates a temporary employment agency and that Plaintiff was employed by Manpower and was paid on a weekly basis, when work was assigned. (Compl., ¶ 2.) Plaintiff alleges that Manpower violated California labor laws by failing to pay wages timely and by failing to provide accurate itemized wage statements. (*Id*., ¶¶ 3, 4.) Plaintiff asserts the following claims: (1) failure to

pay wages timely; (2) failure to furnish accurate wage statements; (3) violation of California's Unfair Competition Law, California Business and Professions Code § 17200; and (4) a claim under the California Labor Code Private Attorney General Act ("PAGA"). Manpower moves to dismiss and/or to strike Plaintiff's claims.

Any additional facts will be addressed as necessary in the remainder of this order.

## ANALYSIS

### A.     Applicable Legal Standards.

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986). The Court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint, when the authenticity of those documents is not questioned, and other matters of which the Court can take judicial notice. *Zucco Partners LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

Federal Rule of Civil Procedure 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Even under Rule 8(a)'s liberal pleading standard, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. ... When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of

the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556-57) (internal quotation marks omitted).

Pursuant to Federal Rule of Civil Procedure 12(f) ("Rule 12(f)"), the Court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous material." Fed. R. Civ. P. (12)(f). Immaterial matter "is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Cal. Dept. of Toxic Substance Control v. ALCO Pac., Inc.*, 217 F. Supp. 2d 1028, 1032 (C.D. Cal. 2002) (internal citations and quotations omitted). Impertinent material "consists of statements that do not pertain, or are not necessary to the issues in question." *Id.* Motions to strike are regarded with disfavor because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice. *Colaprico v. Sun Microsystems Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991). "[M]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Id.* Ultimately, the decision as to whether to strike allegations is a matter within the Court's discretion. *Id.*

**B.    Manpower's Motion.**

   **1.    Plaintiff's Claim for Late Payment Penalties.**

Plaintiff brings a claim for late payment penalties because, according to Plaintiff, Manpower is a temporary service employer who is required to pay wages for work performed during any calendar week by no later "than the regular payday of the following calendar week." Cal. Lab. Code § 201.3(b)(1). (Compl., ¶ 24.) Plaintiff alleges that Manpower mails checks to Plaintiff and the putative class members who do not participate in the direct deposit program. (*Id.*, ¶ 25.) Plaintiff alleges that Manpower informs their employees that if they do not participate in the direct deposit program, "Manpower does not have any control over prompt delivery of [their] paycheck." (*Id.*) Plaintiff further alleges that she and putative class members do not receive their wages timely in violation of California Labor Code § 201.3(b)(1). (*Id.*)

Manpower contends that Plaintiff's allegations are insufficient because she does not specifically allege that Manpower paid any wages late, as opposed to employees just receiving

3

1  them late, and that Plaintiff fails to allege the applicable pay periods. Manpower further
2  contends that Plaintiff fails to allege that any late payment was willful, as is required for
3  penalties under California Labor Code § 203.
4        Upon review of Plaintiff's complaint, the Court finds that Plaintiff has alleged sufficient
5  facts to state a claim under California Labor Code § 201.3(b)(1). Although Manpower argues
6  that there are potential reasons why Plaintiff or other putative class members may have received
7  late payments which were not Manpower's fault, such arguments merely support Manpower's
8  potential affirmative defenses. Plaintiff has alleged sufficient facts, in conjunction with
9  permissible inferences, that Manpower failed to pay wages on time. Therefore, the Court denies
10 Manpower's motion to dismiss and/or strike Plaintiff's claim for violations of California Labor
11 Code § 201.3(b)(1).
12       With respect to Plaintiff's allegations regarding willfulness, the Court finds that
13 Plaintiff's allegations are insufficient. Plaintiff argues that Manpower's alleged statement that
14 Manpower does not have any control over the prompt delivery of paychecks for those
15 employees who do not participate in the direct deposit program shows that Manpower had no
16 intention of complying with the time requirements under California Labor Code § 201.3(b)(1).
17 However, this allegation, standing alone, merely supports an inference that Manpower is not
18 accepting responsibility for any payments which happen to be late, but not that Manpower is
19 intentionally paying wages late. Accordingly, the Court grants Manpower's motion with
20 respect to Plaintiff's claim for waiting time penalties under California Labor Code § 203. The
21 Court strikes Plaintiff's allegations for waiting time penalities, but will provide Plaintiff leave to
22 amend.

23       **2.    Plaintiff's Claim for Failure to Furnish Accurate Wage Statements.**

24       Plaintiff alleges that Manpower knowingly and intentionally fails to furnish "itemized
25 statements showing inclusive dates of the period for which the employee is paid and the name
26 and address of the legal entity that is the employer, as required by Labor Code § 226(a)."
27 (Compl., ¶ 29.) Plaintiff sufficiently alleges facts to show that Manpower violated California
28 Labor Code § 226(a). However, Plaintiff does not allege how she or any of the putative class

members were injured by Manpower's alleged failure to include the dates of the pay period on the itemized statements. Therefore, the Court grants Manpower's motion to dismiss this claim, but will provide Plaintiff leave to amend.

### 3. Plaintiff's Claim Under California's Unfair Competition Law.

Manpower argues that Plaintiff's claim under California's Unfair Competition Law, California Business and Professions Code § 17200, fails because it is premised on defective claims for late wage payments and inaccurate wage statements. However, as discussed above, the Court finds that Plaintiff has sufficiently alleged a claim for late wage payments. Accordingly, the Court denies Manpower's motion to dismiss and/or strike Plaintiff's UCL claim. The Court denies Manpower's motion to dismiss and/or strike Plaintiff's PAGA claim on the same grounds.

### 4. Plaintiff's PAGA Claim.

#### i. PAGA is not Unconstitutional.

Manpower argues that PAGA violates the separation of powers doctrine because the statute lacks the safeguards necessary to ensure neutrality as required by actions which are prosecuted on behalf of the state. The California Constitution contains an explicit provision embodying the separation of powers doctrine. *See Superior Court v. County of Mendocino*, 13 Cal. 4th 45, 52 (1996) (citing Cal. Const. of 1849, art. III, § 1, now art. III, § 3.) Article III provides: "The powers of State government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." Cal. Const., Art. III, § 3. However, despite this language which may "suggest a sharp demarcation between the operations of the three branches of government, California decisions long have recognized that, in reality, the separation of powers doctrine does not mean that the three departments of our government are not in many respects mutually dependent ... or that the actions of one branch may not significantly affect those of another branch." *Mendocino*, 13 Ca. 4th at 52 (internal quotation marks and citations omitted). The California Supreme Court noted that:

> the substantial interrelatedness of the three branches' actions is apparent and commonplace: the judiciary passes upon the constitutional validity of legislative

and executive actions, the Legislature enacts statutes that govern the procedures and evidentiary rules applicable in judicial and executive proceedings, and the Governor appoints judges and participates in the legislative process through the veto power. Such interrelationship, of course, lies at the heart of the constitutional theory of "checks and balances" that the separation of powers doctrine is intended to serve.

*Id*. at 52-53.

Article VI of the California Constitution provides that "[t]he judicial power of this State is vested in the Supreme Court, courts of appeals and superior courts...." Cal. Const., Art. VI, § 1. "In California, the power to regulate the practice of law, including the power to admit and to discipline attorneys, has long been recognized to be among the inherent powers of the article VI courts." *Hustedt v. Workers' Comp. Appeals Bd.*, 30 Cal. 3d 329, 336 (1981). However, California courts have "respected the exercise by the Legislature, under the police power, of a reasonable degree of regulation and control over the profession and practice of law." *Id*. at 337 (internal quotation marks and citation omitted). "In the field of attorney-client conduct," California Courts have recognized "that the judiciary and the Legislature are in some sense partners in regulation. Side by side with the Rules of Professional Conduct approved by [the California Supreme Court] are numerous statutes which regulate the profession and protect consumers of legal services." *Santa Clara County Counsel Attys. Assn. v. Woodside*, 7 Cal. 4th 525, 543-44 (1994), *superseded by statute on other grounds as recognized in Coachella Valley Mosquito & Vector Control Dist. v. Cal. Pub. Employment Relations Bd.*, 35 Cal. 4th 1072, 1077 (2005). Therefore, "a ruling that a statute affecting attorney-client relations is unconstitutional on separation of powers grounds will not be lightly made." *Id*. at 544. To demonstrate a violation of the separation of powers in this context, Manpower "must at least show that a direct and fundamental conflict exists between the operation of the statute in question, as it applies to attorneys, and attorneys' settled ethical obligations...." *Id*. Moreover, the Court must presume that PAGA is valid and uphold it unless its "unconstitutionality clearly, positively, and unmistakably appears." *Calfarm Ins. Co. v. Deukmejian*, 48 Cal.3d 805, 814 (1989) (internal quotation marks and citation omitted). All disputes must be resolved in favor of the statute. *Id*.

6

In support of its argument regarding violation of the separation of powers, Manpower relies on the holdings in *County of Santa Clara v. Superior Court*, 50 Cal. 4th 35 (2010) and *Clancy v. Superior Court*, 39 Cal. 3d 740 (1985), which held that private attorneys who represent the public on its claims must be neutral and subject to oversight.  Manpower contends that attorneys who bring claims under PAGA are not neutral because they will receive a portion of the recovery and that the statute lacks the requisite oversight.  As another district court recently held in a thoroughly reasoned opinion, Manpower's argument is unfounded.  (Docket. No. 42 (Slip Op. in *Aguirre v. DSW, Inc.*, EDCV 11-1522 (C.D. Cal. Jan. 19, 2012).)

In *Clancy*, the California Supreme Court disqualified a private attorney from representing a city on a public nuisance claim for a contingent fee.  39 Cal. 3d at 750. However, the Court stated that its holding should not be "construed as preventing the government, under appropriate circumstances, from engaging private counsel." *Id*. at 748.  In fact, the Court noted that "[c]ertainly there are cases in which a government may hire an attorney on a contingent fee to try a civil case." *Id*. (citing as an example *Denio v. City of Huntington Beach*, 22 Cal. 2d 580 (1943) in which there was a contingent fee arrangement for a law firm hired by the city to represent it in all matters relating to the protection of its oil rights). The Court merely held that in the context of that public nuisance action, the government representative was required to be neutral.  *Id*. at 750.

The court explained that the abatement of the public nuisance at issue required the government attorney to balance competing interests.  On the one hand was the interest of the people in eliminating an obnoxious or dangerous condition.  On the other hand was the interest of landowners in using their property as they desired. *Id*. at 749.  Where, as there, an adult book store was the subject of the abatement action, additional interests were at stake as well, such as the landowner's First Amendment interest in selling protected material and the public's First Amendment interest in having such material available for purchase. *Id*.  In light of the "delicate weighing of values" required by such an action, "[a]ny financial arrangement that would tempt the government attorney to tip the scale [could not] be tolerated." *Id*.  Additionally, the court noted that public nuisance abatement actions are "brought in the name of the People by the

7

1  district attorney or city attorney, .... [a] person who maintains or commits a public nuisance is
2  guilty of a misdemeanor. ... [and] [a] suit to abate a public nuisance can trigger a criminal
3  prosecution of the owner of the property." *Id*. (internal citations omitted). *Id*.

4  The court found that "[t]his connection between the civil and criminal aspects of public
5  nuisance law further supports the need for a neutral prosecuting attorney." *Id*. Thus, the court
6  held that the contingent fee arrangement between the city and private attorney was antithetical
7  to the standard of neutrality that an attorney representing the government must meet when
8  prosecuting a public nuisance abatement action, and, in the interests of justice, ordered the
9  private attorney disqualified from representing the city. *Id*. at 750.

10  In *Santa Clara*, the California Supreme Court limited its holding in *Clancy*, noting "to
11  the extent our decision in *Clancy* suggested that public-nuisance prosecutions always invoke the
12  same constitutional and institutional interests present in a criminal case, our analysis was
13  unnecessarily broad and failed to take into account the wide spectrum of cases that fall within
14  the public-nuisance rubric." *Santa Clara*, 50 Cal. 4th at 52. The court explained that the nature
15  of the particular nuisance action involved was an important factor which lead the *Clancy* Court
16  to conclude that the rules governing the disqualification of criminal prosecutors should have
17  been invoked to disqualify the private attorney hired by the city. The "application of those rules
18  was warranted because the public-nuisance abatement action at issue implicated important [First
19  Amendment] concerns, threatened ongoing business activity, and carried the threat of criminal
20  liability." *Santa Clara*, 50 Cal. 4th at 54. In light of those interests, the court "required the
21  same 'balancing of interests' and 'delicate weighing of values' on the part of the government's
22  attorney prosecuting the case as would be required in a criminal prosecution." *Id*.

23  Nevertheless, the court held in the case before it that "because the public-nuisance
24  abatement action [was] being prosecuted on behalf of the public, the attorneys prosecuting [the]
25  action, although not subject to the same stringent conflict-of-interest rules governing the
26  conduct of criminal prosecutors or adjudicators, [were] subject to a heightened standard of
27  ethical conduct applicable to public officials acting in the name of the public – standards that
28  would not be invoked in an ordinary civil case." *Id*. at 57. Because private counsel who are

8

compensated with a contingent-fee have a direct pecuniary interest in the outcome of the case, "they have a conflict of interest that potentially places their personal interests at odds with the interests of the public and of defendants in ensuring that a public prosecution is pursued in a manner that serves the public, rather than serving a private interest." *Id*. at 57-58. Despite this heightened standard, the court did not require disqualification of the private attorney because there were sufficient safeguards in place. Public attorneys maintained final decision-making authority over all critical discretionary decisions related to the prosecution. *Id*. at 61.

Manpower's reliance on *Clancy* and *Santa Clara* is misplaced. Notably, Manpower has not moved for the disqualification of Plaintiff's attorneys. More importantly, the separation of powers doctrine was not at issue in either *Clancy* or *Santa Clara*. It is not clear, and neither *Clancy* nor *Santa Clara* provide any guidance elucidating, how there is a direct and fundamental conflict between the operation of PAGA and Plaintiff's attorneys' settled ethical obligations. *Woodside*, 7 Cal. 4th at 544. As another district court recently recognized, Plaintiff's claim under PAGA "does not involve the issue of contingency fee arrangements between a governmental entity and a private attorney to litigate a case that is similar to a criminal or even a public nuisance case." (Docket. No. 42 (Slip Op. in *Aguirre* at 8).) Additionally, "neither *Clancy* nor *Santa Clara* involved a situation where the state legislature passed the statute which gave rise to the litigation procedure used therein." (*Id*.) PAGA was enacted to address a genuine concern regarding "a shortage of State funds and staffing to enforce State labor laws." *Caliber Bodyworks, Inc. v. Sup. Ct.*, 134 Cal. App. 4th 365, 374 (2005). Apparently the defendants in *Aguirre* did not "squarely address why it would not be in the California legislature's rather expansive authority to seek to remedy such a problem for the benefit of the public." (*Id*.) Similarly, here, Manpower also fails to address this significant point.

The court in *Aguirre* noted that the defendants also failed to elucidate exactly how allowing for private actions seeking civil penalties for the public benefit – which do not in fact solely benefit the public due to the 25 percent retained by the aggrieved employees under PAGA – "means that the California courts' ability to regulate attorney conduct has been

9

impinged." (*Id.*) First, PAGA does not affect courts' ability to disqualify individual counsel as particular circumstances warrant. Second, actions under PAGA do not involve "a *public entity hiring a private attorney* to prosecute a public nuisance action under a *contingent fee arrangement*" – the factual circumstances which were at issue in *Clancy* and *Santa Clara*. (*Id.*) (emphasis in original). Under PAGA, an aggrieved employee who has personally suffered a violation of the California Labor Code is authorized to initiate the litigation. "Thus, the PAGA paradigm is more akin to the normal injured private plaintiff who hires an attorney to sue for damages situation than to an abatement action." (*Id.* at 9.) Based on Manpower's argument, any time a statute authorizes a private attorney to seek relief that benefits the public, at least in part, the statute would violate the separation of powers doctrine. In the absence of any direct supporting authority, the Court declines to make a holding with such broad implications.

Finally, the Court notes that PAGA does provide for some oversight over plaintiffs' attorneys. Under PAGA, private litigants are prohibited from bringing a lawsuit unless they first provide notice to the California Labor and Workforce Agency ("LWDA"). Cal. Lab. Code § 2966.3. This notice provision provides the state agency an opportunity to determine whether it will investigate the matter and whether it will issue a citation to the employer. *Id.* The Court retains discretion over awards under a PAGA claim and may "award a lesser amount than the maximum civil penalty amount specificied [under PAGA] if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(e)(2). Any settlement reached between the parties on a PAGA claim is subject to court review and approval. *Id.* at § 2699(*l*). Finally, as the court noted in *Aguirre*, "the fears associated with contingency fee arrangements driving *Clancy* and *Santa Clara* are not readily apparent here where the private litigant is entitled to attorney's fees pursuant to the Labor Code, implicating judicial review of the reasonableness of the requested fees." (Docket No. 42 (Slip Op. in *Aguirre* at 9 (citing Cal. Lab. Code § 2699(g)(1)).)

Based on the foregoing, the court in *Aguirre* declined to find that PAGA was unconstitutional on separation of powers grounds for usurping the California judiciary's ability

1  to regulate attorney conduct. (*Id.* at 10.) This Court agrees. Manpower fails to demonstrate
2  that PAGA is clearly, positively, and unmistakably unconstitutional based on the existence of a
3  direct and fundamental conflict between the operation of PAGA and the judiciary's ability to
4  regulate attorneys' ethical obligations. Accordingly, the Court denies Manpower's motion to
5  dismiss or to strike on this ground.

### ii. PAGA is not Required to be Brought as a Class Action.

Manpower argues that Plaintiff's PAGA claim should be dismissed because it is not plead as a class action. The Ninth Circuit has not yet ruled and district courts are split on whether PAGA claims must be brought as class actions pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"). This Court had previously sided with the minority of courts which found that PAGA claims had to satisfy the class action requirements of Rule 23. However, upon further consideration and review of the authority subsequent to the Court's opinion, the Court reconsiders is prior position.

It is undisputed that an "aggrieved employee" suing in a representative capacity under PAGA is not required to satisfy class action requirements if the action is brought in state court. *See Arias v. Superior Court*, 46 Cal. 4th 969, 975 (2009). The federal courts, including this one, that have found Rule 23 must be followed, have relied primarily on a determination that PAGA is a procedural statute, rather than one of substantive law and that, therefore, PAGA is not determinative of the procedures required in federal court. *See Adams v. Luxottica U.S. Holdings Corp.*, 2009 WL 7401970 (C.D. Cal. July 24, 2009); *Thompson v. APM Terminals Pacific Ltd.*, 2010 WL 6309364 (N.D. Cal. Aug. 26, 2010); *Ivey v. Apogen Techs., Inc.*, 2011 WL 3515936 (C.D. Cal. Aug. 10, 2011).

However, "[a]s other courts have observed, PAGA transcends the definition of what is simply procedural." *Moua v. International Business Machines Corp.*, 2012 WL 370570, *3 (N.D. Cal. Jan. 31, 2012); *see also Mendez v. Tween Brands, Inc.*, 2010 WL 2650571, *3 (E.D. Cal. July 1, 2010) ("To find that PAGA creates a wholly procedural right, and that Rule 23 therefore applies, would be to ignore the intent of the legislature in passing the statute."). As distinct from class actions, "[t]he statute's plain purpose is to protect the public interest through

11

a unique private enforcement process, not to allow a collection of individual plaintiffs to sue the same defendant in one consolidated action for the sake of convenience and efficiency." *Moua*, 2012 WL 370570 at *3. PAGA was enacted to alleviate the burden on the LWDA to enforce California Labor Code violations. *See* Cal. Lab. Code 2698(d). "In enacting the statute, the Legislature noted that shrinking resources necessitated the use of private enforcement of the Labor Code provisions, and that creating a right for private enforcement was 'in the public interest.'" *Cardenas v. McLane Foodservice, Inc.*, 2011 WL 379413, *2 (C.D. Cal. Jan. 31, 2011) (quoting Cal. Lab. Code 2698(d)). Therefore, courts have founds PAGA is a statute which "is distinct in purpose and function from a purely procedural rule, such as the method for service of process or formatting a complaint." *Mendez*, 2010 WL 2650571 at *3; *see also Moua*, 2012 WL 370570 at *3 ("Comparing PAGA to a statute or rule of procedure which merely directs the fine details of litigation unfairly minimizes this purpose.").

Courts which have found PAGA claims do not need to comply with the class action requirements of Rule 23 have focused on the distinctions between a PAGA representative action and a true class action. *See, e.g.*, *Mendez*, 2010 WL 2650571 at *3 ("A PAGA claim, therefore, is fundamentally different from a class action in terms of both the interests represented and the relief sought."); *Cardenas*, 2011 WL 379413 at *3; *Sample v. Big Lots Stores, Inc.*, 2010 WL 4939992 (N.D. Cal. Nov.30, 2010) ("[A] PAGA claim serves to vindicate the public through the imposition of civil penalties, as opposed to conferring a private benefit upon the plaintiff and the represented employees."); *Ochoa-Hernandez v. CJADER Foods, Inc.*, 2010 WL 1340777 (N.D. Cal. Apr. 2, 2010); *Machado v. M.A.T. & Sons Landscape, Inc.*, 2009 WL 2230788 (C.D. Cal. July 23, 2009). As the court aptly explained in *Cardenas*:

> The PAGA statute contains no language or requirements concerning class actions. Cal. Labor Code § 2699. Rather, the statute allows "aggrieved employees" to act as private attorneys general by bringing claims for civil penalties. *Id.* at § 2699(a). PAGA actions serve as alternatives to LWDA enforcement actions. *Id.* Seventy-five percent of the funds recovered go to LWDA. *Id.* at § 2699(i). The remaining twenty-five percent go to the "aggrieved employees" and serve as an incentive for such employees to bring enforcement actions in court. *Id.* As an action for penalties, a PAGA claim is distinct from a traditional action for damages. And a PAGA action does not preclude individuals from pursuing civil suits for damages under the Cal. Labor Code. *Id.* at § 2699(g). Accordingly, PAGA plaintiffs do not hold the rights and obligations of a class in their hands.

12

> Since PAGA plaintiffs neither represent the rights of a class nor recover damages, a PAGA claim neither purports to be a class action nor intends to accomplish the goals of a class action. It is not brought "on behalf of all [class] members," so it is does not fall under the terms of Rule 23. Instead, a PAGA claim is a private law enforcement action designed to further the reach of the LWDA.

*Cardenas*, 2011 WL 379413 at * 3.

In determining that PAGA claims need not comply with class action requirements, the California Supreme Court reasoned that "[i]n a lawsuit brought under the act, the employee plaintiff represents the same legal right and interest as state labor enforcement agencies – namely, recovery of civil penalties that otherwise would have been assessed and collected by the [LWDA]." *Arias*, 46 Cal. 4th at 986. The court further noted that the statute "authorizes a representative action only for the purpose of seeking statutory penalties for Labor Code violations ..., and an action to recover civil penalties is fundamentally a law enforcement action designed to protect the public and not to benefit private parties." *Id*. (internal quotation marks and citation omitted).

Similarly, in *Ochoa-Hernandez*, the court distinguished a PAGA claim from a class action on the grounds that, unlike a class action that seeks damages or injunctive relief for injured employees, the purpose of PAGA "is to incentivize private parties to recover civil penalties for the government that otherwise may not have been assessed and collected by overburdened state enforcement agencies." *Ochoa-Hernandez*, 2010 WL 1340777 at *4 (citing *Arias*, 46 Cal. 4th at 986). The court noted that the civil penalties under PAGA are not intended to compensate unnamed employees because the action "is fundamentally a law enforcement action." *Id*. Further, "unlike the binding finality of class actions with respect to damages, if the employer defeats a PAGA claim, the nonparty employees, because they were not given notice of the action or afforded an opportunity to be heard, are not bound by the judgment as to remedies other than civil penalties." *Id*. (citing *Arias*, 46 Cal. 4th at 987). In contrast, class members "would be bound by a judgment against the class, independent of the remedy later sought." *Id*.

13

The Court finds that the reasoning of these courts which have determined that representative PAGA claims need not be brought as class actions is persuasive. PAGA claims are fundamentally different from class actions. Accordingly, the Court denies Manpower's motion to dismiss and/or strike on this ground.

### 5. Plaintiff's Request for Injunctive Relief Fails.

Manpower argues that Plaintiff's request for injunctive relief should be stricken because Plaintiff, as a former employee, lacks standing to recover such relief. Plaintiff argues that, as a temporary employee, there is a real threat of irreparable injury because she may return to work for Manpower. Alternatively, she argues that she has standing to sue for injunctive relief on behalf of other employees because current employees may be resistant to filing their own claims. However, Plaintiff fails to allege any facts in support of either of these theories. She does not allege that she intends to return to work for Manpower in the future. Nor does she allege any facts to show that current employees are fearful of bringing their own claims against Manpower. Therefore, the Court grants Manpower's motion to strike Plaintiff's request for injunctive relief. However, the Court will provide Plaintiff leave to amend.

### 6. Plaintiff's Request for Attorney's Fees.

In her complaint, Plaintiff seeks attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5. Pursuant to this statute:

> a court may award attorneys' fees to a successful party ... in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement ... are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any.

Cal. Code Civ. P. § 1021.5. "The purpose of this fee-shifting provision is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases." *Sliger v. Prospect*, 789 F. Supp. 2d 1212, 1220 (E.D. Cal. 2011) (internal quotation marks and citations omitted). Some courts have awarded attorneys' fees under this statute in successful wage and hour class actions. *Id*. (citing cases). Successful wage an hour class actions may provide significant benefits to a large class of people. *Id*. at

14

1221 (denying motion to dismiss request for attorneys' fees under Section 1021.5 because if successful, plaintiffs' suit could result "in a significant benefit on a large class of people"). The Court declines, as this procedural stage, to find that Plaintiff could not recover attorneys' fees under California Code of Civil Procedure § 1021.5. Accordingly, the Court denies Manpower's motion to strike Plaintiff's request for attorneys' fees pursuant to Section 1021.5.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Manpower's motion to dismiss and/or strike. The Court HEREBY strikes Plaintiff's request for waiting time penalties and injunctive relief and dismisses Plaintiff's claim for failure to provide accurate itemized wage statements. However, the Court is providing Plaintiff leave to amend to cure the defects addressed in this Order. Plaintiff shall file her amended complaint, if any, within twenty days of the date of this Order. If Plaintiff does not amend her complaint, Manpower shall file an answer within twenty days. If Plaintiff does file an amended complaint in accordance with this Order, Manpower shall either file an answer or move to dismiss within twenty days of service of the amended complaint.

**IT IS SO ORDERED.**

Dated: May 3, 2012

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE