UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERA WILLNER,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MANPOWER INC.,<br><br>　　　　Defendant. | Case No. 11-cv-02846-JST<br><br>**ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT AND VACATING HEARING**<br><br>Re: ECF No. 150 |

In this action for claims arising out of purported violations of California labor laws, Plaintiff Willner moves for an order (1) preliminarily approving the parties' settlement agreement; (2) conditionally certifying the proposed class for settlement purposes; (3) appointing Willner as class representative and her counsel as class counsel; (4) approving and directing the mailing of the proposed notice in accordance with the proposed notice plan; and (5) scheduling a fairness hearing for final approval of the settlement agreement. Manpower filed a statement of non-opposition. For the reasons set forth below, the motion is DENIED WITHOUT PREJUDICE, and the hearing scheduled for September 4, 2014, is VACATED. See Civil L.R. 7-1(b).

I.   **BACKGROUND**

　　**A.**　**The Parties and Claims**

Plaintiff Vera Willner is an hourly employee of Manpower, which operates a "temporary employment agency." Fifth Am. Compl. ("FAC") ¶ 2. She received her wages from Manpower by U.S. mail and was paid on a weekly basis when work was assigned to her. Id. Willner brings this putative class action against Manpower "for California Labor Code violations stemming from [Manpower's] failure to furnish accurate wage statements and failure to timely pay all wages to employees who received their wages by U.S. mail." Id. ¶ 1.

//

1    Willner asserts the following five claims in the operative complaint: (1) violations of
2    California Labor Code section 201.3(b)(1) for failure to pay timely weekly wages; (2) violations
3    of California Labor Code section 226 for failure to furnish accurate wage statements;
4    (3) violations of California's Unfair Competition Law ("UCL") for failure to provide accurate
5    wage statements and to pay timely wages; (4) penalties under the Private Attorney General Act
6    ("PAGA") for failure to provide accurate wage statements and to pay timely wages; and
7    (5) violations of California Labor Code sections 201 and 203 for failure to pay timely wages due
8    at separation.

### B.  Procedural History

In its order of March 31, 2014, the court denied Manpower's motion for summary judgment on Willner's section 226 and UCL claims on the ground that a genuine issue of material fact exists with respect to whether Manpower's violations of section 226(a) were knowing and intentional. ECF No. 117 at 18-19. In the same order, the court granted Willner's motion for summary judgment as to her PAGA claim, which is based on Manpower's violations of section 226(a), and it granted Manpower's motion for summary judgment on Willner's claim under section 201.3(b)(1).

On June 30, 2014, the court denied Manpower's motion to dismiss Willner's section 226 claim pertaining to employees who did not receive their wage statements by mail. In so doing, the court rejected Manpower's argument that these putative class claims are time-barred. See ECF No. 141.

### C.  Settlement Agreement

Following the court's March 31 order, the parties engaged in settlement discussions and participated in a full-day mediation on July 2, 2014, before Jeffrey A. Ross, an experienced mediator with expertise in wage and hour law. Ho Decl. ¶ 22. After a full day of arm's-length negotiation, the parties agreed to the core terms of the proposed settlement that is the subject of the instant motion. After several weeks of further settlement negotiations, the parties finalized the settlement, which was fully-executed on July 31, 2014. Id.

As part of the settlement agreement, Manpower has agreed to pay $8,750,000 ("Maximum Settlement Amount") into a Qualified Settlement Fund within ten calendar days of the date on which the settlement is finally approved. Ho Decl., Ex. A ¶ 23. The following amounts will be subtracted from the Maximum Settlement Amount: (1) class counsel's attorney's fees, which will not exceed 33.33% of the Maximum Settlement Amount or $2,916,666.67; (2) costs and expenses of no more than $50,000;[1] (3) a "service" or incentive payment to Willner of $11,000.00; (4) payments made under PAGA totaling $87,500, 75% of which will be paid to the California Labor and Workforce Development Agency and 25% of which will be paid to class members; (5) $25,000 for a "Settlement Class Hold-Back Fund," which will cover any required payments to class members who were mistakenly omitted from the class list or whose eligible paystub count is disputed;[2] and (6) the costs of settlement administration, which are estimated to total $104,326.74.[3]

After subtracting these amounts, any remaining funds (the "Settlement Class Settlement Proceeds"), which Willner estimates will total $5,577,381.59, will be distributed to the class, which Willner defines as follows:

> All persons who were or are employed by Manpower Inc. in California as temporary employees at any time from March 17, 2010 through January 20, 2012 and who received their wage statements (i.e. paystub) by U.S. mail, payment card or electronic submission, except individuals who were or are at the same time jointly employed by a franchisee of Manpower Inc., including but not limited to, franchisee CLMP LTD., dba Manpower of Temecula.

Id. ¶ 21.

Class members who submit timely claims will receive payments on a pro rata basis based

---

[1] Willner's counsel intend to file a motion for attorneys' fees and costs prior to the deadline for filing objections and opting out of the settlement.

[2] The settlement agreement provides that, once 12 months have elapsed after the settlement is finally approved, any unused Hold-Back Funds will be distributed to the cy pres recipient. Ho Decl., Ex. A ¶¶ 6, 10.

[3] The parties have selected Simpluris, Inc. to serve as the Claims Administrator.

on the total number of paystubs that Manpower issued to them during the class period. To calculate the amount that will be paid to each class member, the Settlement Class Settlement Proceeds will be divided by the total number of paystubs issued by Manpower during the class period to Settlement Class Members who submit timely and valid Claim Forms ("Claimants") to produce a pro-rata dollar amount. Id. ¶ 26. Individual settlement awards will be determined by multiplying this dollar amount by the number of paystubs received by each Claimant. Id. Counsel for Willner estimate that Claimants will receive at least $17.71 per paystub issued during the Class Period. Ho Decl. ¶ 27. The average total payment will be approximately $275, and the maximum total payment will be $2,700. This recovery represents 30% to 35% of Willner's likely recovery at trial if she were to prevail, which could range from $25-30 million. Id. ¶ 23. No remaining funds will revert to Manpower.

Within ten calendar days of preliminary approval, Manpower will provide the Settlement Administrator a list containing each Settlement Class Member's name, last known address, phone number, social security number, and number of eligible paystubs received during the class period. Ho Decl., Ex. A ¶ 33. The Settlement Administrator will mail the proposed Notice of Class Action Settlement and Claim Form (collectively "Notice Packet") in both English and Spanish to all identified Settlement Class Members via first-class U.S. Mail. Id. ¶¶ 35, 36. The Notice and Claim Form will be sent to the mailing addresses provided by Manpower from its employment records, unless modified by any updated address information obtained by the Claims Administrator after it consults the National Change of Address database or other available resource. Id. ¶ 34. If a Notice is returned because of an incorrect address, the Claims Administrator will conduct a skip trace search for a more current address and re-mail the Notice and accompanying papers to the Settlement Class Member. Id. ¶ 38. The Settlement Administrator will also mail out reminder postcards to settlement class members who have not yet responded no later than 30 calendar days after the date of first mailing. Id. ¶ 39.

To claim his or her share of the Settlement Class Settlement Proceeds, a Settlement Class Member must submit to the Settlement Administrator an executed Claim Form that is postmarked

within 60 calendar days of the initial mailing of the Notice. Id. ¶ 40. The proposed Settlement Notice, which is attached as Exhibit 1 to the Settlement Agreement, explains the terms of the settlement and how to receive a Settlement Payment, object, or opt out. All objections and requests for exclusion must be completed and post-marked within 30 days from the initial mailing of the Notice. Id. ¶¶ 43, 45. In addition, each Claim Form will include an individualized computation of the approximate amount of the individual settlement award that the Settlement Class Member will receive from the Settlement Class Settlement Proceeds, how that amount was calculated, and how the number of issued paystubs used to calculate the settlement payment can be challenged.

Class members will be able to cash their check within 180 days. Any checks that are not cashed within that time period will be distributed to the Legal Aid Society's Employment Law Center, which performs work on behalf of low-wage workers throughout California and which Willner contends has a sufficient nexus to the objectives of the California Labor Code provisions at issue in this action.[4] Ho Decl. ¶ 38.

As part of the settlement, Willner has agreed to release all claims

> known or unknown, that arise from or relate to employment with Defendant or its conclusion. The employment-related claims that Plaintiff releases include, but are not limited to, claims arising under any and all national, state, or local laws (including statutes, regulations, other administrative guidance, and common law doctrines), including but not limited to the following: (i) anti-discrimination statutes as amended, such as Title VII of the Civil Rights Act of 1964 and Sections 1981 and 1983 of the Civil Rights Act of 1866, which prohibit discrimination based on race, color, national origin, religion, or sex; the Equal Pay Act, which prohibits paying men and women unequal pay for equal work; the Americans with Disabilities Act and state and local laws, which prohibit discrimination based on disability and failure to reasonably accommodate disability; the California Fair Employment and

---

[4] The court finds that this organization has a sufficient nexus to the class members and their claims. See Dennis v. Kellogg Co., 697 F.3d 858, 865 (9th Cir. 2012) ("A cy pres award must be guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members, and must not benefit a group too remote from the plaintiff class.") (citation and internal quotation marks omitted).

>Housing Act; and any other federal, state, or local laws which prohibit retaliation, discrimination and harassment in employment on the basis of actual or perceived race, color, religion, sex, sexual orientation, ancestry, national origin, physical or mental disability or medical condition, marital status or age, or association with a person who has, or is perceived to have, any of those characteristics, or failure to accommodate pregnancy, disability, religious observance or any other legally protected characteristic, status or activity; (ii) federal employment statutes as amended, such as the WARN Act, which requires that advance notice be given of certain work force reductions; the Employee Retirement Income Security Act of 1974, which, among other things, protects employee benefits; the Occupational Safety and Health Act of 1970, which protects employee health and safety; the Fair Labor Standards Act, which regulates minimum wages, overtime and other aspects of pay and work hours; and the National Labor Relations Act, which protects employees from unfair labor practices and provides rights for protected activity; and (iii) other employment statutes, regulations and laws as amended, such as the Industrial Welfare Commission Orders; the California Labor Code relating to wages, compensation, benefits, hours, overtime, alternative workweek schedules, working conditions, off-the-clock time, split shift premiums, reporting time pay, meal periods and rest breaks, record-keeping penalties, paycheck stub and itemized wage statement penalties, minimum wage penalties, meal and rest period penalties, waiting time penalties, penalties for alleged failure to provide proper seating, and reimbursement of expenses; California Labor Code Section 2699 et seq. (the Private Attorneys General Act of 2004), which provides for penalties, fees and costs for violations of various California wage-hour and other laws; the Family and Medical Leave Act and the California Family Rights Act, which mandate certain leaves of absence; and unfair competition in violation of Business and Professions Code Section 17200. Plaintiff expressly waives the protection of California Civil Code section 1542. Section 1542 provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor

Ho Decl., Ex. A ¶ 54.

Class members who do not opt out of the action would release the following claims:

>[A]ny and all claims, rights, demands, liabilities and causes of action of every nature and description, *whether known or unknown, up to and including January 20, 2012, that are related in any way to any claim alleged in the Lawsuit* that (1) the Released Parties did not provide accurate, itemized wage statements containing the format or content required by California Labor Code section 226, (2) the Released Parties did not timely pay all wages owed, or (3) otherwise arise from or are related to the allegations in the Lawsuit, whether founded on federal, state, and/or local law, including but not limited to, claims for penalties under California Labor Code section 226

> and/or the California Private Attorneys General Act of 2004 (California Labor Code sections 2699 et seq.), claims for unfair business practices in violation of California Business and Professions Code sections 17200, et seq., and related claims for damages, punitive damages, liquidated damages, restitution, equitable relief, attorneys' fees, interest and costs.

Id. ¶ 55 (emphasis added).

This release expressly excludes "any claims under federal, state, municipal or local law for unpaid wages which is defined in the California Labor Code as 'all amounts for labor performed[.]'" Id.

Any released claims will be released with respect to "(i) ManpowerGroup Inc. (formerly known as Manpower Inc.); (ii) any of their present and former parents, subsidiaries and affiliated companies or entities; and (iii) the officers, directors, employees, partners, shareholders, agents, successors, assigns and legal representatives of the entities included in (i) and (ii)." Id. ¶ 18 (defining "Released Parties"). Claims against "franchisees of Manpower Group Inc. fka Manpower" will not be released. Id.

Manpower reserves the right to rescind the settlement agreement if 5% or more of the eligible Settlement Class Members opt out. Id. ¶ 44.

### D. Jurisdiction

The court has jurisdiction over this action under 28 U.S.C. § 1332(d).

## II. LEGAL STANDARD

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992). The settlement of a certified class action must be fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2). But, where the "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). In these situations, settlement approval "requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." Dennis v. Kellogg Co., 697 F.3d 858, 864 (9th Cir.

2012) (citation and internal quotation marks omitted).

## III. DISCUSSION

### A. Class Certification

A district court may certify a class action under Federal Rule of Civil Procedure 23 if the parties seeking certification satisfy the four requirements identified in Rule 23(a) as well as one of the three subdivisions of Rule 23(b). Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997).

When determining whether to certify a class for settlement purposes, a court must pay "heightened" attention to the requirements of Rule 23. Id. at 620. Indeed, "[s]uch attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." Id. (citations omitted).

As discussed below, Willner has shown that Rule 23's requirements for certification of the putative class for settlement purposes are met.

#### 1. Rule 23(a)

Rule 23(a) contains four threshold requirements that any proposed class action must meet: "(1) numerosity (a 'class [so large] that joinder of all members is impracticable'); (2) commonality ('questions of law or fact common to the class'); (3) typicality (named parties' claims or defenses 'are typical . . . of the class'); and (4) adequacy of representation (representatives 'will fairly and adequately protect the interests of the class')." Id. at 613 (quoting Fed. R. Civ. P. 23).

##### a. Numerosity

The numerosity requirement is satisfied when a plaintiff shows that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

Willner contends that this requirement is satisfied because the settlement class includes approximately 20,270 members. Ho Decl. ¶ 40.

The court concludes that Willner has satisfied her burden to show that the number of putative class members is sufficiently numerous that their joinder would be impracticable.

### b. Commonality

The commonality requirement is satisfied when a plaintiff shows that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality exists when the plaintiff's claims "depend upon a common contention" of "a nature that it is capable of classwide resolution," such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Dukes, 131 S.Ct. at 2551.

Willner contends that this requirement is met because Manpower provided all of its temporary workers in California with wage statements that were of an identical format as part of a common policy that applied to all such workers.

The court concludes that commonality exists, because the wage statements that the putative class members received were identical. Thus, the information contained in one of the identical statements will permit the court to determine whether all statements were deficient, and consequently, whether Manpower is liable for violations of section 226 with respect to all of the putative class members.

### c. Typicality

Typicality exists if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (citation and internal quotation marks omitted).

Willner contends her claims are typical of the claims of the putative class members because she received the same wage statements as the putative class members.

The court concludes that Willner's claims are typical of those of the putative class members, because she received wage statements that contained the same kind of information as the statements that the putative class members received.

### d. Adequacy of Representation

A plaintiff may bring claims on behalf of a class only if she "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998) (citation omitted).

Willner contends that neither she nor her counsel have any conflicts of interest with the putative class members because she and the class members suffered the same injuries, and as a result, all of them seek the same relief. Willner also argues that she and her counsel will continue to prosecute this action vigorously on behalf of the class in light of the actions that she and her counsel have taken on behalf of the class thus far, which include filing this suit, conducting discovery, and monitoring the progress of the case. Willner Decl. ¶¶ 3-7, ECF No. 120, Ex. 4. Willner's counsel assert that they are highly experienced in employment class action litigation. Hanson Decl. ¶¶ 2-6; Ho Decl. ¶¶ 4-5.

The court is persuaded that Willner and her counsel will adequately protect the interests of the class in light of the totality of the evidence before it. Willner's counsel has ample experience in the prosecution of class actions, and has successfully litigated this case through summary judgment. Lead plaintiff Willner has responded to discovery requests, signed declarations, and sat for a lengthy deposition. There is no indication in the record of collusion or a conflict of interest.

### 2. Rule 23(b)(3)

This provision requires the court to find that: (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### a. Predominance

"The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the

common and individual issues' in the case," and tests whether the proposed class is "'sufficiently cohesive to warrant adjudication by representation.'" Wang v. Chinese Daily News, Inc., 737 F.3d 538, 545 (9th Cir. 2013) (quoting Hanlon, 150 F.3d at 1022).

Willner argues that this requirement is satisfied because all putative class members received wage statements from Manpower that were in the same format, suffered from the same deficiencies, and were issued based on the same corporate policies.

The court finds that this requirement is met, because two of the elements of a section 226 claim, namely the existence of violations of section 226(a) and the requirement that such violations be "knowing and intentional," will be common to all class members and will predominate over any individual issues.

### b. Superiority

"Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation," and is certainly superior "if no realistic alternative exists." Valentino v. Carter-Wallace, Inc., 97 F. 3d 1227, 1234-35 (9th Cir. 1996).

Willner contends that this requirement is satisfied because the class members do not have a strong interest in litigating their claims individually and because the use of the class action mechanism would more effectively use judicial and other resources.

The court finds that Willner has shown that a class action is superior to any other manner of litigating the claims of the putative class members.

### B. Fairness of the Settlement

In examining a pre-certification settlement agreement, a district court "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 947 (9th Cir. 2011). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." Hanlon, 150 F.3d at 1026 (citation omitted). A court may not

"delete, modify or substitute certain provisions" of the settlement; rather "[t]he settlement must stand or fall in its entirety." Id.

Preliminary approval of a settlement and notice to the proposed class is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval." In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citation omitted).

Here, the proposed settlement has obvious deficiencies. Accordingly, Willner's motion for approval of the settlement must be DENIED.

### 1. The Settlement Process

The stipulated settlement was reached after the parties exchanged discovery, engaged in substantial motion practice, and participated in private mediation. Moreover, Willner asserts that settlement is desirable because it "ensures timely relief and substantial recovery of the wages and penalties Plaintiff contends are owed to the proposed Settlement Class," while, on the other hand, "continued litigation would be costly, time consuming, and uncertain." Mot. at 13. These assertions support the conclusion that the parties were sufficiently informed about the strengths and weaknesses of Willner's claims when negotiating the settlement and that settlement is non-collusive and likely to benefit the class members.

### 2. Obvious Deficiencies

#### a. Scope of the Releases

The Court concludes that the scope of the release pertaining to the class members is overly broad, because it improperly releases any claims "whether known or unknown, up to and including January 20, 2012, that are related in any way to any claim alleged in the Lawsuit . . ." Ho Decl., Ex. A ¶ 55. The phrase "related in any way" could capture claims that go beyond the scope of the allegations in the operative complaint, which the Ninth Circuit has held is inappropriate.[5] See Hesse v. Sprint Corp., 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement

---

[5] The settlement agreement's "Unreleased Claims" provision, which excludes certain claims from

agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but *only* where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action.") (citations and internal quotation marks omitted) (emphasis added). This excessive breadth could be cured by changing the phrase "related in any way" to "arise out of the allegations in the operative complaint." See Collins v. Cargill Meat Solutions Corp., 274 F.R.D. 294, 303 (E.D. Cal. 2011) (holding that release of claims was not overly broad because the "released claims appropriately track the breadth of Plaintiffs' allegations in the action and the settlement does not release unrelated claims that class members may have against defendants").

### b. Notice

The proposed notice states that "there are approximately 18,039 members in the Settlement Class." Ho Decl., Ex. A, Ex. 1 at 5. This figure is lower than the 20,270 class members identified by Willner's counsel. See Ho Decl. ¶ 40. Willner has not provided any explanation or justification for this discrepancy.

The notice is missing the average payment that each Claimant can expect to receive. Ho Decl., Ex. A, Ex. 1 at 5. The notice also is missing the amount that is expected to be paid to the claims administrator, as well as the address of the claim administrator. Id. at 7-9

### c. Deadline for Opting Out or Objecting

The settlement gives class members only 30 days to opt out or to object to the settlement, a period of time which the court finds to be too short in duration. Ho Decl., Ex. A ¶¶ 43, 45. 60 days would be more reasonable.

## IV. CONCLUSION

Willner's motion for preliminary approval of the proposed settlement is DENIED WITHOUT PREJUDICE.[6] She may file a new motion for preliminary approval of the proposed

---

the universe of claims that the class members would release under the agreement, does not affect this conclusion, because the scope of the release as a whole might still capture claims that go beyond the scope of the allegations in the operative complaint. See Ho Decl., Ex. A ¶ 55.

[6] Because the court has rejected the settlement in its current form, the objections filed by some

13

1  settlement that cures each of the deficiencies identified in this order within sixty days of the date
2  this Order is filed.
3  **IT IS SO ORDERED.**
4  Dated:  September 3, 2014



     _____
     JON S. TIGAR
     United States District Judge

---

purported class members are overruled as MOOT.  See ECF No. 154.