UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERA WILLNER,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MANPOWER INC.,<br><br>　　　　Defendant. | Case No. 11-cv-02846-JST<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING IN PART MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD**<br><br>Re: ECF Nos. 199, 201 |

Before the Court are Plaintiff's Motion for Final Approval of Class Action Settlement and Plaintiff's Motion for Attorneys' Fees, Costs, and Service Award. ECF Nos. 199, 201. Defendant Manpower Inc. ("Manpower") has filed statements of non-opposition to the relief requested in these motions. ECF Nos. 200, 202. The Court held a final fairness hearing on June 18, 2015. For the reasons set forth below, the Court will grant the motion for final approval of the settlement, grant in part the request for an award of attorneys' fees, grant the request for costs, and approve a modified service award to Plaintiff Vera Willner.

**I.　BACKGROUND**

**　A.　Plaintiff's Claims**

Plaintiff Vera Willner was an hourly employee of Manpower, which operates a temporary employment agency. Fifth Amended Complaint, ECF No. 118, ¶ 2. She received her wages from Manpower by U.S. mail, and was paid on a weekly basis when work was assigned to her. Id. Willner brings this putative class action against Manpower "for California Labor Code violations stemming from [Manpower's] failure to furnish accurate wage statements and failure to timely pay all wages to employees who received their wages by U.S. mail." Id. ¶ 1.

Willner asserts the following claims in the operative complaint: (1) violations of California

Labor Code section 201.3(b)(1) for failure to pay timely weekly wages; (2) violations of California Labor Code section 226 for failure to furnish accurate wage statements; (3) violations of California's Unfair Competition Law ("UCL") for failure to provide accurate wage statements and to pay timely wages; (4) penalties under the Private Attorney General Act ("PAGA") for failure to provide accurate wage statements and to pay timely wages; and (5) violations of California Labor Code sections 201 and 203 for failure to pay timely wages due at separation. Id. ¶¶ 24-47.

In its order of January 2, 2015, the Court: (1) granted preliminary approval of the parties' proposed settlement agreement and conditionally certified the putative class for settlement purposes; (2) appointed Plaintiff Willner as Class Representative and Plaintiff's counsel, Goldstein Borgen Dardarian & Ho and Jackson Hanson, LLP as Lead Counsel and Class Counsel; and (3) approved the proposed class notice and claim form. ECF No. 196 at 5-6.

### B.     Amended Settlement Agreement

The settlement agreement defines a class of:

> All persons who were or are employed by Manpower Inc. in California as temporary employees at any time from March 17, 2010 through January 20, 2012 and who received their wage statements (i.e. paystub) by U.S. mail, payment card or electronic submission, except individuals who were or are at the same time jointly employed by a franchisee of Manpower Inc., including, but not limited to, franchisee CLMP LTD., dba Manpower of Temecula.

Joint Stipulation of Settlement and Release ("Amended Settlement Agreement"), ECF No. 184-1, Ex. 1, ¶ 21.

Pursuant to the agreement, Manpower will create a settlement fund of $8,750,000.00, which represents between 30 and 35% of the recovery that Class Counsel estimates would be likely at trial if Plaintiff were to prevail. Id. ¶ 23; ECF No. 201 at 15. This amount includes payments to the class; attorneys' fees and costs; any service award to Plaintiff; PAGA penalties payable to the California Labor and Workforce Development Agency in the amount of $65,625.00; a $25,000.00 hold-back fund to cover payments to claimants who were mistakenly omitted from the class list and/or whose eligible paystub count was incorrectly calculated; and the estimated $102,000.00 cost of settlement administration. ECF No. 201 at 3-7; see Amended

1  Settlement Agreement ¶¶ 10, 23, 27; Declaration of Danielle Behring Regarding Notice and
2  Settlement Administration ("Behring Decl."), ECF No. 201-4, ¶ 19. The available funds will be
3  distributed to claimants on pro rata basis, according to the number of paystubs each claimant
4  received from Manpower during the class period. Amended Settlement Agreement ¶ 26. Unused
5  funds from the hold-back fund and uncashed check amounts will be distributed to the cy pres
6  recipient, Legal Aid Society - Employment Law Center.[1] Id. ¶¶ 6, 10, 62. No portion of the fund
7  will revert to Manpower. Id. ¶ 23. Class members will release all claims alleged in the operative
8  complaint, as well as any wage and hour claims and pay claims that could have arisen from the
9  allegations in that complaint. Id. ¶ 55.

Plaintiff also seeks an award of attorneys' fees in the amount of $2,916,666.67, which represents 33 1/3% of the settlement fund; $33,300.00 in actual and expected expenses; and a service award of $11,000.00. ECF No. 201 at 6-7; ECF No. 199.

### C.  Jurisdiction

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d).

## II.  FINAL APPROVAL OF SETTLEMENT

### A.  Legal Standard

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1025 (9th Cir. 1998). In addition, Rule 23(e) "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." Id. at 1026. In order to assess a settlement proposal, the district court must

> balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

---

[1] In its September 3, 2014, order, the Court found that this organization has a sufficient nexus to the class members and their claims to be a proper cy pres recipient. ECF No. 177 at 5 n.4.

Id.[2]

### B. Analysis

#### 1. Adequacy of notice

"The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco., 688 F.2d 615, 624 (9th Cir. 1982).

The Court previously approved the parties' proposed plan for providing notice to the class. ECF No. 196. The class administrator has fulfilled the notice plan by mailing notice packets in English and Spanish to the 19,352 class members;[3] mailing reminder postcards to 12,784 class members who had not submitted valid claim forms; re-mailing notice packets to individuals for whom it received forwarding addresses; conducting skip-trace searches for notice packets returned as undeliverable and re-mailing packets to newly discovered addresses; re-mailing packets to additional addresses found by Class Counsel; and responding to 917 calls and emails from class members about the settlement. ECF No. 201 at 7-9; Behring Decl. ¶¶ 4-13. In addition, information about the settlement, including a copy of the class notice and preliminary approval order, was posted on Goldstein Borgen Dardarian & Ho's website. Declaration of Laura L. Ho in Support of Plaintiff's Motion for Final Approval of Class Action Settlement ("Ho Final Approval Decl."), ECF No. 201-2, ¶ 7. The mailed notice program reached approximately 96% of the class. Behring Decl. ¶ 11.

In light of the foregoing, the Court finds that the parties have provided the best practicable notice to class members.

#### 2. Fairness, adequacy, and reasonableness of settlement

##### a. Strength of Plaintiff's case

---

[2] No governmental entity has participated in this action, so discussion of that factor is omitted in the analysis below.

[3] Since Plaintiffs filed their motion for final approval, the number of class members has increased by one to 19,353. Supplemental Declaration of Danielle Behring Re Update on Settlement Administration ("Supplemental Behring Decl."), ECF No. 205, ¶ 5. This class member contacted the claims administrator and was determined to have been inadvertently excluded from the Class List. Id.

Approval of a class action settlement is favored where plaintiffs must overcome significant barriers to make their case. Chun-Hoon v. McKee Foods Corp., 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Here, Willner acknowledges that, if the settlement is not approved, she faces various risks in proceeding with this litigation. ECF No. 201 at 12. In particular, she states that the Court's March 31, 2014, order resulted in Plaintiff losing her claim for waiting time penalties arising from her alleged Section 201.3(b)(1) violations and negatively affected her claim for statutory penalties under Section 226(e); that Manpower has expressed vehement disagreement with the March 31, 2014, order, which also granted Willner's motion for summary judgment on her PAGA claim for inaccurate wage statements in violation of section 226(a), and would likely appeal it;[4] that Willner faced the risk that the Court might find the appropriate amount of penalties to be significantly less than she claims; and that Manpower might successfully oppose class certification. ECF No. 201 at 12-13. In addition, Willner acknowledges that the Ninth Circuit may have found for Manpower on appeal. Id.; see also ECF No. 199 at 9-10 (discussing "considerable risk" in litigating wage statement claims because such claims are "an emerging area under both state and federal law").

These weaknesses weigh in favor of approving the settlement. See Moore v. Verizon Commc'ns Inc., No. 09-cv-1823-SBA, 2013 WL 4610764, at *6 (N.D. Cal. Aug. 28, 2013) (finding that the relative strength of plaintiffs' case favored settlement because plaintiffs admitted they would face hurdles in establishing class certification, liability, and damages).

      **b. Risk, expense, complexity, and likely duration of litigation**

For the same reason, the second factor favors settlement as well. See Chun-Hoon, 716 F. Supp. 2d at 851; see also Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 966 (9th Cir. 2009) ("Inevitable appeals would likely prolong the litigation, and any recovery by class members, for years. This factor, too, favors the settlement."). Absent settlement, Class Counsel "anticipate a vigorous and lengthy challenge to both class certification and the merits of Plaintiff's claims." ECF No. 201 at 13-14. The litigation history in this case supports this prediction. Plaintiff's

---

[4] See ECF No. 122 (Defendant's motion for certification of the March 31, 2014, order for immediate interlocutory appellate review).

5

efforts to obtain class certification, establish liability, and present evidence regarding damages and penalties may take years, and any recovery might be further delayed by appellate proceedings. Id. This factor favors approval, which offers immediate and certain recovery to class members.

### c. Risk of achieving and maintaining class-action status

The Court had not certified a class at the time this settlement agreement was executed. Willner acknowledges that in opposition to class certification, Manpower has argued that: (1) Plaintiff waived her right to seek class certification under the one-way intervention rule; (2) the class lacks commonality due to the addition of temporary employees who did not receive their wage statements by mail; (3) Plaintiff is not a typical or adequate class representative for putative class members who received their wage statements by means other than mail; and (4) the class lacked predominance due to the need to inquire into whether Plaintiff or the putative class could not promptly and easily determine Manpower's address or the start of the pay period from the wage statements alone. ECF No. 201 at 13. Although Willner disagrees with these arguments, she recognizes that the case raises "complicated proof issues, particularly in light of Wal-Mart v. Dukes, 131 S. Ct. 2541 (2011) and Comcast Corp. v. Behrend, 133 S. Ct. 1426 (2013)," and that, if the settlement is not approved, "there is risk that the Court may deny class certification or, following initial certification, subsequently decertify the class based on unanticipated individualized issues or manageability concerns." ECF No. 201 at 13. These uncertainties with respect to class certification weigh in favor of final approval. See Chun-Hoon, 716 F. Supp. 2d at 851 (this factor supports approving a settlement where both parties acknowledge the possibility of decertification).

### d. Settlement amount

The proposed $8,750,000.00 settlement represents between 30 and 35% of the recovery that Class Counsel estimates would be likely if Plaintiff prevailed at trial. Amended Settlement Agreement ¶ 23; ECF No. 201 at 15. Plaintiff's lawsuit also precipitated Manpower's decision to change its wage statements to include its employer address and the pay period beginning date, which will continue to benefit all hourly Manpower employees in California by enabling them to more easily verify the correct payment of their wages. ECF No. 201 at 15; see Declaration of

6

Laura L. Ho in Support of Plaintiff's Motion for Attorneys' Fees, Costs, and Service Award ("Ho Fees Decl."), ECF No. 199-1, ¶ 10. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008). In light of the uncertainties described above, the Court finds the percentage of recovery fair and reasonable. See Dyer v. Wells Fargo Bank, N.A., 303 F.R.D. 326, 331 (N.D. Cal. 2014) (holding that "[b]ecause of the uncertainties attached to the litigation of these claims," a recovery of approximately one-third of the potential value of class plaintiffs' claims was "fair and reasonable").

### e.     Extent of discovery and stage of the proceedings

Courts look to the amount of exchanged information prior to settlement to determine whether the parties have made an informed decision to settle the case. See Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1239 (9th Cir. 1998). Here, the parties have exchanged a significant amount of both formal and informal discovery over a period of over three years, including propounding multiple sets of written discovery requests and responses, conducting several depositions, and analyzing extensive company data concerning Manpower's paystubs and electronic payments. Declaration of Laura L. Ho in Support of Plaintiff's Renewed Motion for Preliminary Approval of Class Action Settlement ("Ho Preliminary Approval Decl."), ECF No. 184-1, ¶¶ 16-20. Plaintiff asserts that "[t]hese exchanged documents and information informed the Parties about the merits of Plaintiff's claims and Manpower's defenses and enabled them to accurately estimate the Class' damages." ECF No. 201 at 15-16. She adds that "[t]his candid assessment of the claims and defenses was further aided by the mediation process and the assistance of a mediator skilled and experienced in wage and hour class actions," as well as through review of evidence proffered in support of and opposition to substantive motions in the case. Id. at 16.

The Court is persuaded that the parties conducted sufficient discovery and are at a stage in the proceedings that allows them to make an informed decision regarding the adequacy of the settlement. See In re Omnivision, 559 F. Supp. 2d at 1042 (finding the parties sufficiently informed about the case prior to settling the action because they propounded and reviewed

discovery, took depositions, briefed motions, and engaged in mediation).

### f. Counsel's experience

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." Id. at 1043. Here, Class Counsel has demonstrated their experience in litigating similar wage and hour and class action cases, and that they are informed about the claims, defenses, and applicable laws governing Plaintiff's claims. See Ho Preliminary Approval Decl. ¶¶ 4-5; Declaration of Kirk D. Hanson in Support of Plaintiff's Renewed Motion for Preliminary Approval of Class Action Settlement ("Hanson Preliminary Approval Decl."), ECF No. 184-2, ¶¶ 2-6. No party has provided the Court any evidence to contradict this finding. Accordingly, Class Counsel's endorsement weighs in favor of approving the settlement. See In re Omnivision, 559 F. Supp. 2d at 1043 (finding Class Counsel's recommendation in favor of settlement presumptively reasonable because counsel demonstrated knowledge about the case and securities litigation in general).

### g. Reaction of the class members

Class members' positive reaction to a settlement weighs in favor of settlement approval; "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." Id.

No class member has objected to the settlement. Behring Decl. ¶ 17; Supplemental Behring Decl. ¶ 8. Furthermore, of the 19,353 class members, only twelve (approximately 0.06%) have submitted valid requests for exclusion. Supplemental Behring Decl. ¶¶ 5,7. Class Counsel report that they have communicated with numerous class members, and that none have expressed any objections to the terms of the settlement. Ho Final Approval Decl. ¶ 6; Declaration of Kirk D. Hanson in Support of Plaintiff's Motion for Final Approval of Class Action Settlement ("Hanson Final Approval Decl."), ECF No. 201-3, ¶ 6. This factor weighs strongly in favor of approval. See, e.g., Chun-Hoon, 716 F. Supp. 2d at 852 (finding that 4.86% opt-out rate strongly supported approval); Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 577 (9th Cir. 2004) (approving a settlement with forty-five objections and 500 opt-outs from a 90,000-person class, representing

.05% and .56% of the class, respectively).

After reviewing these factors, the Court finds the settlement fair, reasonable, and adequate. It therefore grants Plaintiff's motion for final approval of the settlement.

### III.     ATTORNEYS' FEES

#### A.     Legal Standard

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  The law governing the settled claims, here California law, also governs the award of fees.  See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002) ("Because Washington law governed the claim, it also governs the award of fees."). Nevertheless, the Court may still look to federal authority for guidance in awarding attorneys' fees.  See Apple Computer, Inc. v. Superior Court, 126 Cal. App. 4th 1253, 1264 n. 4 (2005) ("California courts may look to federal authority for guidance on matters involving class action procedures.").

"Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 942 (9th Cir. 2011); see Lealao v. Beneficial California, Inc., 82 Cal. App. 4th 19, 27 (2000) ("Despite its primacy, the lodestar method is not necessarily utilized in common fund cases."); Serrano v. Priest, 20 Cal. 3d 25, 35 (1977) ("the 'common fund' exception has . . . been applied by the courts of this state in numerous cases"); Melendres v. City of Los Angeles, 45 Cal. App. 3d 267, 283-84 (1975) (awarding fees as a percentage of a common fund).

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." In re Bluetooth, 654 F.3d at 941. "Because the benefit to the class is easily quantified in common-fund settlements," courts can "award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." Id. at 942.

Although the Ninth Circuit's 25% benchmark for calculating fees using the percentage-of-

1  recovery method, see id., does not apply here, the factors courts in this circuit evaluate in
2  considering whether to adjust the presumptive award are also relevant evaluating the
3  reasonableness of a requested attorneys' fee award. Thus, the Court may take into account
4  "exceptional results," the risk of non-recovery, any "benefits beyond the case settlement fund" that
5  counsel achieved for the class, counsel's "reasonable expectations . . . based on the circumstances
6  of the case and the range of fee awards out of common funds of comparable size," and any
7  unusual burdens borne by counsel. Vizcaino, 290 F.3d at 1048-50.

"[E]ven though a district court has discretion to choose how it calculates fees . . . it abuses that discretion when it uses a mechanical or formulaic approach that results in an unreasonable reward." In re Bluetooth, 654 F.3d at 944 (internal quotation marks omitted); see also Serrano, 20 Cal. 3d at 49 (reviewing an attorneys' fee award for abuse of discretion). Thus, the Ninth Circuit has "encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method." In re Bluetooth, 654 F.3d at 944; see also In re Sutter Health Uninsured Pricing Cases, 171 Cal. App. 4th 495, 512 (2009) (affirming attorneys' fee award calculated as a percentage of recovery with a lodestar cross-check).

**B.    Analysis**

The settlement fund totals $8,750,000.00. Amended Settlement Agreement ¶ 23. Class Counsel seeks an attorneys' fee award of 33.33% of the common fund, totaling $2,916,666.67. ECF No. 199 at 1. Plaintiff has calculated Class Counsel's lodestar as $1,201,463.00 as of May 14, 2015, and expect it to total $1,251,463.00 when the settlement is fully concluded. Ho Final Approval Decl. ¶¶ 20, 14-15, Ex. A; Hanson Final Approval Decl. ¶ 8. Based on this information, the lodestar multiplier for the proposed fee award is 2.33.

In support of the requested 33.33% fee award, Plaintiff argues that Class Counsel has obtained substantial monetary relief and a policy change valued at as much as $13,125,000.000; faced substantial risks in prosecuting the litigation; and carried a heavy financial burden in representing Plaintiff and the class on a contingency basis. See ECF No. 199 at 1-2, 8. She also argues that the fee has been supported by the class, is consistent with fee awards granted in similar cases, and is confirmed by the lodestar cross-check. Id. at 2.

The Court agrees that several factors weigh in favor of Plaintiff's requested award. First, the attorneys' fee award should take into account the risk of representing this class action Plaintiff on a contingency basis over a period of four years. See Elizabeth Chamblee Burch, Financiers As Monitors in Aggregate Litigation, 87 N.Y.U. L. Rev. 1273, 1290 (2012) ("[L]itigation's risks and rewards cannot be measured in a single case; instead, lawyers tend to think of contingent-fee cases as a portfolio of risk. Diversifying cases diversifies risk, such that the winning cases finance not only their own costs, but the costs of the losing cases as well.").[5] Second, this case has been fiercely litigated; the parties have engaged in substantial motion practice, including briefing multiple motions to dismiss or strike, a motion to transfer venue, cross-motions for summary judgment, and a class certification motion. Ho Fees Decl. ¶ 7. Third, in addition to the monetary relief obtained in the settlement agreement, Plaintiff's lawsuit has also precipitated a significant policy change with respect to Manpower's wage statements. Id. ¶ 10.

Plaintiff has not, however, demonstrated that an award of 33.33% of the common fund is appropriate. Class Counsel contends that Manpower's policy change has a value of $13,125,000.00, explaining that "[t]his estimate is calculated by assuming that the yearly value of this Settlement continues for each year into the future," and concluding that "[t]he resulting constructive common fund, which totals over $21 million, means Plaintiff's requested fee award constitutes only 14% of the constructive common fund." Declaration of Kirk D. Hanson in Support of Plaintiff's Motion for Attorneys' Fees, Costs, and Service Award ("Hanson Fees Decl."), ECF No. 199-2, ¶ 9. But counsel provides no way for the Court to confirm the correctness of his valuation, which appears to the Court to be highly subjective at best and arbitrary at worst. He concedes that "it is difficult to calculate the monetary value of this policy change," and does not explain why extrapolating the value of the settlement into the future in this

---

[5] But see Hawthorne v. Umpqua Bank, No. 11-CV-06700-JST, 2015 WL 1927342, at *5 (N.D. Cal. Apr. 28, 2015) ("This Court has previously explained that contingency-fee litigation is "not a 'special consideration'—it's the nature of the beast. Sometimes the recovery turns out to be lower than expected, or even non-existent; sometimes the recovery turns out to be substantial or even enormous.") (citations omitted).

way provides "a fair estimated value of this policy change." Id. Furthermore, Defendant changed its policy effective April 20, 2012, long before the parties reached a settlement. Id. ¶ 8. Viewed from this vantage point, Defendant's change in policy seems more an appropriately self-interested act designed to ward off future litigation than an additional concession to Class Counsel.

Nevertheless, the Court cannot say that the change has no value to the class. It is now easier for employees to verify the correct payment of their wages and the address of their employer by simply looking at a paystub, instead of having to look to sources beyond it. Id. Counsel explains that this change affects thousands of hourly employees currently employed by Manpower in California and will benefit several times more than that amount of future employees. Id. And regardless of whether Plaintiffs had to demand the change at the bargaining table, the fact remains that Class Counsel's actions in bringing this litigation caused the change.

Accordingly, the Court concludes that an award of 30% of the common fund, or $2,625,000.00, is warranted in this case. While the policy change is not the sole reason for the 30% award, and while the parties have not provided sufficient information from which the Court could place a specific value on it, the Court notes that if the policy change were valued at an amount equaling at least $1,750,000.00 — a value that is about 13% of Plaintiff's counsel's estimate — then a fee award of $2,625,000.00 would represent 25% of the total actual and constructive relief obtained by counsel.

The reasonableness of a $2,625,000.00 award is further confirmed by the lodestar crosscheck. The briefs and declarations submitted in connection with the motion for final approval and motion for fees adequately support the anticipated $1,251,463.00 total lodestar. See ECF No. 199 at 16-19; ECF No. 201 at 22; Ho Final Approval Decl. ¶¶ 20, 14-15, Ex. A; Hanson Final Approval Decl. ¶ 8. The lodestar multiplier for this fee award is therefore 2.10. See In re Omnivision, 559 F. Supp. 2d at 1048 (noting that courts have approved multipliers between 1 and 4); Vizcaino, 290 F.3d at 1051 n.6 (noting that the majority of class action settlements approved had fee multipliers that ranged between 1.5 and 3); Wershba v. Apple Computer, Inc., 91 Cal. App. 4th 224, 255 (2001) ("Multipliers can range from 2 to 4 or even higher").

Accordingly, the Court awards attorneys' fees in the amount of 30% of the common fund,

a total of $2,625,000.00. The difference between the amount of attorneys' fees requested ($2,916,666.67), and the amount the Court will award Plaintiff's counsel ($2,625,000.00), which amounts to $291,666.67, will be added to the portion of the settlement fund that is distributed to class members, and will be divided among class members on a pro rata basis according to the number of paystubs each class member received, i.e. on the same basis that Plaintiff has proposed with respect to the rest of the settlement fund.

## IV. EXPENSES

An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." Harris v. Marhoefer, 24 F.3d 16, 19 (9th Cir. 1994) (citation omitted); see also Rider v. Cnty. of San Diego, 11 Cal. App. 4th 1410, 1423 n.6 (1992) ("the recovered 'common fund' shall also serve as the source from which the Taxpayers recover their trial costs and their costs on appeal"); Fed. R. Civ. P. 23(h) (permitting the court to award nontaxable costs that are authorized by law or by the parties' agreement). A review of the records submitted shows that Class Counsel has incurred $31,152.16 in actual costs and reasonably expect to incur additional costs before the action is closed, for a total of $33,300.00. Ho Final Approval Decl. ¶¶ 21, 17, Ex. B; Hanson Final Approval Decl. ¶ 9; Ho Fees Decl. ¶ 17, Ex. 1; Hanson Fees Decl. ¶ 20. These expenses were incurred in connection with research, filing fees, travel, mediation, telephone charges, obtaining transcripts, copying, and mailing. Because these expenses are of the type normally charged to a paying client, Willner's motion for $33,300.00 in costs is granted.[6]

## V. INCENTIVE AWARDS

### A. Legal Standard

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." Staton v. Boeing Co., 327 F.3d 938, 977 (9th Cir. 2003). "These awards 'are discretionary . . . and are intended to compensate class representatives

---

[6] Willner notes that the class notice set forth an anticipated expenses award of $50,000.000, and explains that the excess amount set aside for attorneys' costs will be added to the net settlement amount and redistributed to the participating claimants. ECF No. 201 at 23 n.14; see Ho Final Approval Decl. ¶ 21.

for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general.'" In re Cellphone Fee Termination Cases, 186 Cal. App. 4th 1380, 1393-94 (2010) (quoting Rodriguez, 563 F.3d at 958-59).

> Criteria courts may consider in determining whether to make an incentive award include: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

Id. at 1394-95; see also Staton, 327 F.3d at 977. In the Ninth Circuit, district courts must scrutinize "all incentive awards to determine whether they destroy the adequacy of the class representatives." Radcliffe v. Experian Info. Solutions, Inc., 715 F.3d 1157, 1165 (9th Cir. 2013).

Courts have also considered as additional factors: the disparity between the amount the average class member will receive and the amount of the incentive award, id., and the percentage of the total common fund comprised by the incentive award, Krzesniak v. Cendant Corp., No. 05-cv-05156-MEJ, 2008 WL 4291539, at *2 (N.D. Cal. Sept. 18, 2008). Many courts in the Ninth Circuit have also held that a $5,000 incentive award is "presumptively reasonable." See, e.g., In re Toys R Us-Delaware, Inc. FACTA Litig., 295 F.R.D. 438, 470-72 (C.D. Cal. 2014); Harris v. Vector Marketing Corp., No. 08-cv-5198-EMC, 2012 WL 381202, at *7 (N.D. Cal. Oct. 22, 2014) ("Several courts in this District have indicated that incentive payments of $10,000 or $25,000 are quite high and/or that, as a general matter, $5,000 is a reasonable amount." (citations omitted)).

**B.    Analysis**

Plaintiff Willner requests an incentive award of $11,000.00. She argues that this award is fair, just, and reasonable because she took on substantial risk in bringing the class action, exposing herself to notoriety and personal difficulties from serving as the sole named plaintiff, as well as the financial risk of Defendant's costs if she lost at trial. ECF No. 199 at 20-21; Declaration of Plaintiff Vera Willner in Support of Plaintiff's Motion for Attorneys' Fees, Costs, and Service Award, ("Willner Decl."), ECF No. 199-3, ¶ 4; Hanson Fees Decl. ¶¶ 13, 21. In addition, she spent

14

fifty-four hours prosecuting this action over a period of four years, including sitting for a day-long deposition, responding to written discovery requests, assisting in and signing initial disclosures, completing several declarations, assisting in the preparation of the case for mediation, and evaluating and approving the proposed settlement on behalf of the class. ECF No. 199 at 21; Willner Decl. ¶ 3. Willner states that she sacrificed the pursuit of her individual claims in order to advocate for the class, and notes that her receipt of a service award is contingent upon her executing a general release, which is not required of the other class members. ECF No. 199 at 21; Willner Decl. ¶ 4; see also Hanson Fees Decl. ¶ 21. The requested service award represents 0.13% of the total settlement fund, and no class member has objected to it. ECF No. 199 at 22.

To determine the reasonableness of a requested incentive payment, courts consider the proportionality between the incentive payment and the range of class members' settlement awards. In Burden v. SelectQuote Insurance Services, for example, the court rejected a $10,000.00 enhancement award for class representative Burden. No. 10-cv-5966-LB, 2013 WL 3988771, at *6 (N.D. Cal. Aug. 2, 2013). Although Burden was deposed twice, attended three settlement conferences, and spent eighty hours working on the case, the court stated that "the $10,000 incentive award is nearly three times the largest amount paid to any class member, and even $5,000 exceeds the range of the class members' settlements," which ranged between $1,850.00 and $3,335.00. Id. Rather than a $10,000.00 enhancement award, the court granted Burden $5,000.00 for his efforts. Id.; see also Wren v. RGIS Inventory Specialists, No. 06-cv-05778-JCS, 2011 WL 1230826, at *36-38 (approving $5,000.00 awards to twenty class representatives, as well as smaller awards to four additional representatives; although most class members received less than $5,000.00, many received more than $5,000.00); Ko v. Natura Pet Prods., Inc., 09-cv-02619-SBA, 2012 WL 3945541, at *14-15 (N.D. Cal. Sept. 10, 2012) (denying a $20,000.00 enhancement award request, and instead awarding $5,000.00; although the class representative expended approximately fifty to one hundred hours and participated in all stages of the litigation, the estimated payout to each class member was $35.00).

Here, the expected average settlement payment to each class member is approximately $605.02, while the maximum award is expected to be approximately $4,105.33. Supplemental

Behring Decl. ¶ 10. Willner's $11,000.00 requested award is therefore far greater than the average payment to a class member, as was the case in Burden. In addition, Willner contributed less of her own personal time than Burden, who received an award of $5,000.00. Comparison with individual class members' recovery weighs against an $11,000.00 award to Willner.

Courts will, however, grant an award that exceeds $5,000.00 when it is warranted. See, e.g., Harris, 2012 WL 381202, at *7-8 (granting a $12,500.00 award, rather than the $25,000.00 requested from a $13 million settlement fund; though the approximate net payments were $57.00 and $75.00 to each of two subclasses, the class representative signed a broader general release than did her fellow class members, spent more than 100 hours on the litigation, had her friends and family subpoenaed, and disclosed her private information); Dyer, 303 F.R.D. at 335-36 (granting $10,000.00 awards, rather than the $15,000.00 requested from a $14.7 million settlement fund; the average payment was $1,271.00, but the class representatives contributed a significant amount of their time and negotiated the requested award only after agreeing to a settlement amount for the class).

Factors weighing in favor of an award greater than $5,000.000 in this case include the significant time and energy Willner has invested in this litigation over a period of four years, including sitting for a deposition; the risk to her reputation and work opportunities; and the broad general release she has signed, which releases her pled individual claim under Section 203.

Based on all of these considerations, the Court finds that an enhancement award of $7,500.00 is appropriate to compensate Willner for the time and effort she has spent in connection with this litigation and the risks she took on behalf of her fellow class members. The difference between the award requested ($11,000.00), and the amount the Court will approve ($7,500.00), which amounts to $3,500.00, will be added to the portion of the settlement fund that is distributed to class members, and will be divided among class members on a pro rata basis according to the number of paystubs each class member received, i.e. on the same basis that Plaintiff has proposed with respect to the rest of the settlement fund.

## CONCLUSION

For the foregoing reasons, the Court hereby orders as follows:

1. The Court makes final its certification of the class for the purposes of this settlement only.

2. The Court grants final approval of the proposed settlement agreement.

3. The Court confirms the appointment of Plaintiff Vera Willner as Class Representative and grants her a service award of $7,500.00.

4. The Court confirms the appointment of Plaintiff's counsel, Goldstein Borgen Dardarian & Ho and Jackson Hanson, LLP as Lead Counsel and Class Counsel, approves a fee award of $2,625,000.00, and awards $33,300.00 in costs.

5. The Court orders the following implementation schedule, as set forth in the parties' settlement agreement, for further proceedings:

| Deadline | Action |
| --- | --- |
| Ten calendar days after the settlement becomes final (defined as thirty days after entry of the final approval order) | Defendant to pay the settlement administrator the maximum settlement payment of $8,750,000.00 to make all payments owed under the settlement. |
| Within ten calendar days of funding | Settlement Administrator will mail or wire all required payments under the settlement. |
| Forty-five days after the initial date of mailing the settlement checks | Settlement Administrator will mail reminder postcards to all claimants who have not cashed their settlement checks, |
| One-hundred eighty days after the initial date of mailing of the settlement checks | Settlement Administrator will enter stop payment on all uncashed settlement checks. |
| One-hundred ninety days after the initial date of mailing of settlement checks | Settlement Administrator will distribute any uncashed check funds to the Legal Aid Society - Employment Law Center. |
| Twelve months after the Settlement becomes final | Settlement Administrator will distribute any remaining hold-back funds to the Legal Aid Society - Employment Law Center |

6. The Court retains continuing jurisdiction over this settlement solely for the purposes of enforcing this agreement, addressing settlement administration matters, and addressing such post-judgment matters as maybe appropriate under Court rules and applicable law. The Parties shall inform the Court, by filed declaration, when all settlement funds are finally distributed.

17

1         7.      Judgment is hereby entered on the terms set forth above.  The clerk shall close the
2  file.
3         IT IS SO ORDERED.
4  Dated:  June 20, 2015


_____
JON S. TIGAR
United States District Judge